1  ROBERT J. BENSON (STATE BAR NO. 155971)
   rbenson@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   2050 Main Street
3  Suite 1100
   Irvine, California  92614-8255
4  Telephone:   +1-949-567-6700
   Facsimile:   +1-949-567-6710
5
6  Attorneys for Applicant TPK Touch Solutions
   (Xiamen) Inc.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10   CV 16  80193 MISC.

11  *In re* Ex Parte Application of          Case No.

12  TPK Touch Solutions (Xiamen) Inc.        **DECLARATION OF ROBERT J.
                                             BENSON IN SUPPORT OF *EX PARTE*
13           Applicant.                      APPLICATION FOR AN ORDER
                                             PURSUANT TO 28 U.S.C. § 1782
14                                           GRANTING LEAVE TO OBTAIN
                                             DISCOVERY FROM HTC FOR USE IN
15                                           FOREIGN PROCEEDINGS**

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ROBERT J. BENSON IN SUPPORT
OF EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782

I, Robert J. Benson, declare as follows:

1.     My name is Robert J. Benson.  I am a partner at Orrick, Herrington & Sutcliffe LLP, 2050 Main Street, Suite 1100, Irvine, California 92614.  I am a member of the bar of the State of California and have been admitted to practice in California since 1991.  I am counsel for TPK Touch Solutions (Xiamen) Inc. ("TPK") in connection with its *Ex Parte* Application for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery from HTC for Use in Foreign Proceedings.

2.     Based on public records, I am informed and believe that HTC Corporation and its subsidiary, HTC America, Inc. ("HTC") designs, manufactures and sells mobile devices including touch-screen smartphones.  I am further informed and believe that HTC has a limited design facility in San Francisco, California, and that a senior employee in the San Francisco office "plays a key role in HTC's overall product-roadmap portfolio design, an important element of HTC's smart phones."  For example, attached as Exhibit 1 is a true and correct copy of HTC's opening brief in support of its motion to transfer venue to the Northern District of California, in Case No. 10-544-GMS in the District of Delaware, which reflects such facts on page 8.

3.     I have met and conferred with counsel for HTC concerning TPK's *Ex Parte* Application, together with other outside counsel for TPK.  Based on our communications with HTC, it is my understanding that HTC manufactured and sold HTC EVO Design 4G mobile phones prior to April 1, 2012, to customers including Sprint.  It is also my understanding that HTC manufactured and sold HTC Rezound mobile phones prior to April 1, 2012, to customers including PCD, which supplied the phones to Verizon.  Moreover, based on my communications with counsel for Sprint and Verizon, it is also my understanding that that the HTC Rezound and EVO Design 4G mobile phones were sold in the U.S. prior to April 1, 2012 on a nationwide basis, including stores located in the Northern District of California.

4.     I have reviewed the draft subpoena to HTC attached as Exhibit B to TPK's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery from HTC.  The documents requested in the subpoena are narrowly directed to documents that

DECLARATION OF ROBERT J. BENSON IN SUPPORT
OF EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782

1    will evidence HTC's design, manufacture and sale of the HTC Rezound and EVO Design 4G

2    mobile phones prior to April 1, 2012.  These documents are intended for use in the patent

3    litigation proceeding initiated by O-film in the Nanchang High Court in China to support TPK's

4    public use defense to O-film's infringement claims, and may further be used in a petition to

5    China's State Intellectual Property Office for invalidation of the patent-in-suit.  I met and

6    conferred with counsel for HTC concerning the scope of the document requests in Exhibit B,

7    together with other outside counsel for TPK, and understand that HTC is willing to produce

8    documents responsive to those requests.

9         5.      During our meet and confer, HTC also agreed not to object on jurisdictional

10    grounds to a subpoena issued from this Court, for purposes of the present application, and to

11    accept service of the subpoena.  Once the subpoena issues, we will negotiate the terms of a

12    protective order with counsel for HTC and file a proposed protective order with the Court.

13         I declare under penalty of perjury under the laws of the United States of America that the

14    foregoing is true and correct.

15         Executed on September 7, 2016, in Irvine, California.

16

17

18

19                            ROBERT L. BENSON

20                       Orrick, Herrington & Sutcliffe LLP
                         Attorneys for Applicant TPK Touch

21                       Solutions (Xiamen) Inc.

22

23

24

25

26

27

28

TREEHUGGER™
30% PCW RECYCLED TAB
A Professional Indexes & Files Product

800-422-9191
www.proindexes.com

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | C.A. No. 10-544-GMS |
| HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., EXEDEA, INC., | |
| Defendants. | |

**OPENING BRIEF OF DEFENDANTS HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., AND EXEDEA, INC. IN SUPPORT OF MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

John W. Shaw (No. 3362)
Karen L. Pascale (No. 2903)
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John Bostic
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

Dated: July 16, 2010

**Table of Contents**

|  |  |  | **Page** |
|---|---|---|---|
| I. | NATURE AND STAGE OF PROCEEDINGS | ................................................................ | 1 |
| II. | SUMMARY OF THE ARGUMENTS | ................................................................ | 3 |
| III. | STATEMENT OF FACTS | ................................................................ | 5 |
|  | A. | Apple developed the alleged inventions in the Northern District of California | 5 |
|  | B. | Apple is targeting technology developed in California. | 5 |
|  | C. | The Northern District of California is Apple's home district. | 7 |
|  | D. | HTC has an office in the Northern District of California, which is also closer to HTC's operation centers in Taiwan, ROC and Bellevue, Washington. | 8 |
|  | E. | Neither the parties nor evidence is located in the District of Delaware | 9 |
| IV. | ARGUMENT | ................................................................ | 10 |
|  | A. | Apple could have brought this action in the Northern District of California. | 12 |
|  | B. | The private-interest factors weigh heavily in favor of transfer to the Northern District of California. | 12 |
|  |  | 1. Apple's choice of a Delaware forum deserves little, if any, deference. | 12 |
|  |  | 2. The Northern District of California is a far more convenient forum for the witnesses | 13 |
|  |  | 3. The Northern District of California would be a far more convenient forum for the parties. | 15 |
|  |  | 4. Apple's claims arose in the Northern District of California. | 16 |
|  | C. | The Public Interest Factors Also Weigh in Favor of Transfer to the Northern District of California. | 16 |
|  |  | 1. Practical considerations and court congestion favor transferring to the Northern District of California. | 16 |
|  |  | 2. Judicial efficiency strongly support transfer notwithstanding Apple's tactical request for consolidation. | 17 |

            3.     The Northern District of California has a strong interest in resolving the dispute. .................................................................18

V.      CONCLUSION.........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp. 2d 192 (D. Del. 1998)......................................................................12, 13

*Brackett v. Hilton Hotels Corp.,*
    619 F. Supp. 2d 810 (N.D. Cal. 2008) ......................................................................14

*Continental Cas. Co. v. American Home Assur. Co.,*
    61 F. Supp. 2d 128(D. Del. 1999).............................................................................13

*Ferens v. John Deere Co.,*
    494 U.S. 516 (1990)..................................................................................................19

*Google, Inc. v. Traffic Info., LLC,*
    C.A. No. 09-642-HU, 2010 WL 743878 (D. Or. Feb. 2, 2010)...............................17

*Gulf Oil v. Gilbert,*
    330 U.S. 501 (1947)..................................................................................................14

*Harvey v. Apple Inc.,*
    E.D. Tex. C.A. No. 2:07-CV-327-TJW-CE................................................................8

*In re Genentech,*
    566 F.3d 1338 (Fed. Cir. 2009)...............................................................5, 11, 15, 16

*In re Hoffman-La Roche,*
    587 F.3d 1333 (Fed. Cir. 2009)...........................................................................5, 11

*In re Nintendo,*
    589 F.3d 1194 (Fed. Cir. 2009)...........................................................................5, 11

*In re TS Tech USA, Corp.,*
    551 F.3d 1315 ..........................................................................................11, 12, 13, 19

*In re Volkswagon of Am. Inc.,*
    545 F.3d 304 ..............................................................................................................12

*In re Zimmer Holdings, Inc.,*
    No. 2010-M938, 2010 WL 2553580 (Fed. Cir. June 24, 2010) .........................5, 11

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)........................................................................................10

*Mekiki Co., Ltd. v. Facebook, Inc.,*
    C.A. No. 09-745-JAP, 2010 U.S. Dist. LEXIS 55638 (D. Del. June 7, 2010) ...............passim

*Nilssen v. OSRAM Sylvania, Inc.*,
    No. 00-695-JJF, 2001 WL 34368395 (D. Del May 1, 2001)....................................................15

*Pennwalt Corp. v. Purex Indus., Inc.*,
    659 F. Supp. 287 (D. Del. 1986)...........................................................................................14

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
    230 F. Supp. 2d 655 (E.D. Pa. 2002) ....................................................................................13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007 ..............................................................................................................12

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)........................................................................................................5, 18, 20

**STATUTES**

28 U.S.C. § 1391(c) ......................................................................................................................12

28 U.S.C. § 1400(b) ......................................................................................................................12

28 U.S.C. § 1404(a) ........................................................................................................1, 2, 4, 10, 13

Section 1989 of the California Code of Civil Procedure .............................................................14

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................................18

Fed. R. Civ. P. 45 .........................................................................................................................14

## I.   NATURE AND STAGE OF PROCEEDINGS

This case is Plaintiff Apple's third attempt to manipulate the case-assignment process and side-step a more convenient and just venue for its own perceived advantage, and to the detriment of the Court, the Defendants (collectively "HTC"), and third-party Nokia.

Apple has filed three separate cases against HTC in this District—transfer of each is all but mandated under 28 U.S.C. § 1404(a). Apple filed the first case on March 2, 2010 (C.A. No. 10-166-GMS (the "166 Case")). Originally assigned to visiting Judge Kelly, the 166 Case alleged infringement of ten patents and was stayed by agreement of Apple in favor of a parallel proceeding filed by Apple before the International Trade Commission that alleges infringement of the same ten patents. Apple filed the second case (C.A. No. 10-167-GMS (the "167 Case")) on the same day, and it also was assigned to Judge Kelly. In that action, Apple asserted infringement of 10 more patents.

Three weeks after filing the 166 and 167 Cases, Apple for the first time claimed that these cases were related to two earlier-filed actions filed against Apple by Nokia. (C.A. No. 10-167, D.I. 5). The Nokia actions—both filed in 2009 (C.A. No. 09-791-GMS and 09-1002-GMS)—had been pending for several months when Apple filed the 166 and 167 Cases. Apple claimed that all four cases were related because eleven of the 44 total patents asserted between the parties overlapped, even though the cases had been stayed as to eight of those eleven patents. Overall, only three of out of a total 26 non-stayed patents overlapped between the cases.

HTC promptly moved to transfer both cases, and Apple took discovery on the transfer motion. Finding no useful information in this discovery to support its opposition to the transfer motion, and apparently to obscure the fact that the 166 and 167 Cases are centered in the Northern District of California and not in Delaware, on May 24, 2010—the very day that Apple opposed transfer—Apple filed a motion to consolidate the 166 and 167 Cases with two earlier

pending actions filed against Apple by Nokia.  Briefing on the motion to consolidate was

completed on July 2, 2010, and a short time later the 166 and 167 Cases were reassigned to Your

Honor.

In the present case, Apple is again attempting to side-step the center of gravity of the

dispute between Apple and HTC, which lies in the Northern District of California, not in the

District of Delaware.  Filed on June 21, 2010, this cases alleges infringement of four Apple

patents:  U.S. Patent Nos. 7,383,453 ("the '453 Patent); 7,657,849 ("the '849 Patent"); 6,282,646

("the '646 Patent"); and 7,380,116 ("the '116 Patent").  Compl. (D.I. 1) ¶¶ 14-49.[1]  HTC

respectfully requests that the Court transfer this case to the Northern District of California under

28 U.S.C. § 1404(a) because it has no connection to the District of Delaware.  No known

witnesses are located in Delaware, and no party has any employees, office, property, or records

located in Delaware.  By contrast, there are numerous connections between this dispute and the

Northern District of California, which is home to Apple's headquarters, witnesses and

documents, the conception and development of all asserted patents, ten of the eleven named

inventors of the patents-at-issue, and critical third-party witnesses from Google who developed

certain of the accused technology.

Apple has indicated that it will seek to consolidate this case with the Nokia cases.  *See*

Apple Reply in Support of Mot. to Consolidate (CA. No. 10-166-GMS (D.I. 42) at 5 n.4; C.A.

No. 10-167-RK (D.I. 47) at 5 n.4).  But seemingly Apple has manufactured any relation between

this case and Apple's counterclaims against Nokia.  The only ostensible overlap among these

cases is due to the fact that Apple intentionally dropped the '453 Patent from the 167 Case and

now asserts it here.  This is the *only patent* this case has in common with the Nokia cases.

---

[1] Apple originally asserted the '453 and '849 Patents against HTC in the 167 Case; Apple
amended the 167 Complaint on June 22, 2010, however, to drop those two patents, on the same
day Apple asserted them in this litigation.

Moreover, consolidation would be folly for all of the reasons set forth in HTC's opposition to

Apple's motion to consolidate. *See* HTC Opp. to Mot. to Consolidate (C.A. No. 10-166-GMS

(D.I. 37); C.A. No. 10-167-GMS (D.I. 41)). There is only a *single-patent* overlap as to this case,

and only a *three-patent* overlap among *all* the non-stayed cases Apple has filed against HTC and

Nokia respectively. Consolidation thus offers little—if any—countervailing benefit against the

absurdity of forcing HTC and Nokia into a consolidated proceeding involving *31 total non-*

*stayed patents* of which *sixteen patents have nothing at all to do with HTC* (six asserted by

Apple against only Nokia, and ten asserted by Nokia against only Apple)*, and twelve patents that*

*have nothing at all to do with Nokia* (nine asserted by Apple against only HTC, and three

asserted by HTC against only Apple)—not to mention Nokia's distinct antitrust claim against

Apple and Apple's contract claims against Nokia.[2] *See id.* at 5-6; HTC Answer and

Counterclaims (C.A. No. 10-167-GMS (D.I. 48)). Even indulging Apple's argument that

consolidation offers some benefit, it would be far outweighed by over-complication, new delays,

increased expense, and unavoidable prejudice to HTC from the 31-patent monstrosity over which

Apple would have this Court preside. The Court should instead transfer this case (and the 166

and 167 Cases) to the Northern District of California.

## II.    SUMMARY OF THE ARGUMENTS

HTC respectfully requests that the Court grant its motion to transfer on the following

grounds:

---

[2]  Nokia filed another patent infringement suit against Apple this past May in the Western
District of Wisconsin. Nokia accused Apple in that suit of infringing five Nokia patents, and
Apple has counter-claimed against Nokia for infringing seven Apple patents. Declaration of
Ellison Wada ("Wada Decl.") Exs. 1, 2. Apple has moved to transfer that case to this Court, and
presumably would seek consolidation of these suits as well. Ex. 3. Only *one* of the seven Apple
patents it at issue in that case overlaps with the non-stayed patents asserted against HTC—thus,
Apple would apparently have this Court preside over a consolidated matter involving *42 active*
*patents.*

1.      There can be no dispute that, under to 28 U.S.C. § 1404(a), the Northern District of California would be a far more convenient venue for the parties and witnesses because: (1) the vast majority of witnesses, including the named inventors and third-party witnesses from Google and Qualcomm, are in or closer to California, but no known witnesses are located in Delaware; (2) HTC has no employees, offices, property, or records located in Delaware, and the Northern District of California is significantly more convenient for HTC witnesses, who are located in Taiwan or on the West Coast; and (3) Apple is headquartered in the Northern District of California, where its sources of proof and witnesses are located, and where it developed its alleged inventions at issue.

2.      Apple's decision to file here—the *only* connection this case bears to this District—cannot justify venue in the District of Delaware. *See Mekiki Co., Ltd. v. Facebook, Inc.*, C.A. No. 09-745-JAP, 2010 U.S. Dist. LEXIS 55638 at *8-*10 (D. Del. June 7, 2010) (granting motion to transfer to Northern District of California for convenience where, *inter alia*, dispute was not meaningfully connected to Delaware and parties were residents of, respectively, the Northern District of California and Asia).  Litigating this case in Delaware would impose substantial travel, expense, and inconvenience on the parties and witnesses without any countervailing benefit.

3.      The interests of justice require transfer.  The only vaguely substantive response Apple could mount to HTC's motion to transfer the 166 and 167 Cases was a small overlap with Apple's counterclaims against Nokia in cases pending in this District.  Not surprisingly then, Apple failed to move to consolidate or relate the HTC and Nokia cases until the very date Apple's opposition to HTC's motions to transfer the 166 and 167 Cases came due.  Even assuming *arguendo* that Apple's strategic collateral attack were procedurally proper, it is inconsistent with Supreme Court law.  "The power to defeat a transfer to the convenient federal

forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum." *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964).

4.     Further, numerous recent Federal Circuit decisions have directed district courts to transfer patent infringement cases out of districts that, as here, lack meaningful connection to the parties, witnesses, and evidence. *See In re Zimmer Holdings, Inc.*, No. 2010-M938, 2010 WL 2553580 (Fed. Cir. June 24, 2010); *In re Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009);  *In re Hoffman-La Roche*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009).

## III.     STATEMENT OF FACTS

### A.     Apple developed the alleged inventions in the Northern District of California

All of the inventions at issue here were developed within the Northern District of California.  Exs. 4-7.[3]  Ten of the eleven alleged inventors of the patents-in-suit hail from Northern California.  *See id.*  Further, based upon investigation to date, *all ten of these eleven named inventors appear to continue to work and live in Northern California today.*  Wada Decl. ¶ 20.  The single inventor who resides outside of the Northern District of California is located in Colorado Springs, Colorado, which is nonetheless more conveniently located to California than Delaware.  *See id.* ¶¶ 21, 27, 28 and Exs. 21-22.

### B.     Apple is targeting technology developed in California.

Because Apple's infringement contentions target technology developed in California, third-party witnesses from Google and Qualcomm who were involved in its development are also located in California.

---

[3] Unless otherwise noted, all exhibits cited herein are attached to the Wada Decl.

The '849 Patent, entitled "Unlocking a Device By Performing Gestures On an Unlock Image," on its face implicates the operating system or user interface of an accused device. *See* Compl. (D.I. 1) ¶ 26; Ex. 7. So too do the '646 and '116 patents, each entitled "System for Real-Time Adaptation to Changes in Display Configuration," which include diagrams explicitly identifying an operating system as a component of the invention. Exs. 4, 5.

The primary user interface of HTC's accused devices is Google's Android Operating System ("Android OS"). Indeed, Apple's confirms that it is again targeting this technology in this case by its allegation that the accused devices include "*at least* [HTC] phones incorporating the Android Operating System." *See* Compl. (D.I. 1) ¶ 13 (emphasis added). The development of the Android OS, from work at Android to the present, took place in Silicon Valley. *See* Declaration of Andrew Rubin ("Rubin Decl.")[4] ¶ 6. In August 2005, Google, which maintains its headquarters in Mountain View, California, acquired Android Inc., based in Palo Alto, California. *Id.* ¶ 4; Declaration of Brian Ong ("Ong Decl.")[5] ¶ 2. Both Mountain View and Palo Alto, California are located within the Northern District of California. Wada Decl. ¶¶ 11-12, Exs. 9, 10. Upon Google's acquisition of Android, the co-founder and CEO of Android as well as many engineers joined Google in Mountain View and continued working on operating systems for smart phones, which eventually resulted in the Android OS. Rubin Decl. ¶¶ 3-5. The individuals primarily responsible for the research, design and development of the Android OS, continue to be located at Google's facilities in Mountain View, California. Ong. Decl. ¶ 5

When Apple insisted on taking venue-related discovery, the depositions of HTC's declarants only confirmed these facts: that the top personnel primarily responsible for the engineering, marketing, distribution, sales, research, design, and development of the Android

---

[4] Attached as Exhibit 26 to Wada Decl.

[5] Attached as Exhibit 25 to Wada Decl.

OS, including the group leader, Andrew Rubin, are located in the Northern District of California. *See* Ex. 27 (Dep. Tr. of Brian Ong) at 10:22-12:16. In fact, numerous Android OS-related employees report to Mr. Rubin—80 to 90 percent of whom are located in Mountain View. *Id.* at 15:20-17:22.; *see also* Ex. 28 (Dep. Tr. of Andrew Rubin) at 28:5-16. That includes all of the Google engineers who collaborate with HTC to develop the smart phones that use the Android OS. *Id.* at 35:9-20.

In addition, the '453 Patent, entitled "Conserving Power By Reducing Voltage Supplied To an Instruction-Processing Portion Of A Processor," implicates another third party and its witnesses located in California. *See* Compl. (D.I. 1) ¶ 15; Ex. 6. Qualcomm Inc., designs and provides to HTC the baseband processing chip that performs the power-saving function of HTC devices. *See* Declaration of Jason Mackenzie ("Mackenzie Decl.")[6] ¶¶ 5, 10. Qualcomm, Inc. is based in San Diego, California. Wada Decl. ¶ 29; Ex. 23. HTC has worked with and continues to work with Google and Qualcomm in developing, designing, and manufacturing the HTC Mobile Devices. *See* Mackenzie Decl. ¶ 10.

**C.      The Northern District of California is Apple's home district.**

Apple is a corporation organized under the laws of the state of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Compl. (D.I. 1) ¶ 1. Apple's Cupertino headquarters are within the Northern District of California. Wada Decl. ¶¶ 11-12 and Exs. 9-10. Indeed, as Apple itself has asserted in support of its efforts to transfer a case from the Eastern District of Texas to the Northern District of California, "Apple's Cupertino headquarters are located approximately ten miles from the Northern District of California's San Jose courthouse, forty-five miles from the San Francisco courthouse, and forty-eight miles from

---

[6] Attached as Exhibit 24 to Wada Decl.

the Oakland courthouse." Ex. 29 at 3 (Apple's Mot. to Transfer Venue, *Harvey v. Apple Inc.*, E.D. Tex. C.A. No. 2:07-CV-327-TJW-CE).

**D.    HTC has an office in the Northern District of California, which is also closer to HTC's operation centers in Taiwan, ROC and Bellevue, Washington.**

HTC devotes considerable money and employee time to developing its smart phones. Part of that effort includes a design facility in San Francisco, California, which focuses on hardware and usability design for HTC's smart phones. Mackenzie Decl. ¶ 8. Roughly 16 people work at HTC's San Francisco office. *Id.* One senior employee in that office plays a key role in HTC's overall product-roadmap portfolio design, an important element of HTC's smart phones. *See id.* The San Francisco office also has design documents related to HTC's smart phones. *See id.* ¶ 5.

HTC America's headquarters, which are also HTC's principal U.S. operations, are in Bellevue, Washington. *See id.* ¶¶ 3, 5, 9. HTC's sales, marketing, and product-support activities targeted at the American market are managed from the Bellevue office. *See id.* ¶ 9. Compared to Taiwan, discussed below, a relatively small number of engineers who worked on the allegedly-infringing hardware and software work in the state of Washington. *See id.* ¶ 6. Related design and development documents also reside in HTC's Bellevue location. *See id.* ¶ 5. Some design documents are also located in Seattle. *See id.* And sales-and-marketing documents, including sales literature, forecasts, and market analyses, that pertain to the U.S. market are maintained primarily in Bellevue, Washington (and to a lesser degree in Taiwan). *See id.* Both Seattle and Bellevue, Washington are more conveniently located to the Northern District of California than to the District of Delaware. *See* Wada Decl. ¶¶ 23-24 and Exs. 17, 18.

HTC's relevant evidence is located primarily in Taiwan. Most of the HTC engineers who work on hardware and software design, development, and integration for HTC's smart phones work and live in Taiwan. Mackenzie Decl. ¶ 6. Most of the engineers who work on smart-phone

manufacturability also work and live in Taiwan. *Id.* For those potential witnesses, travel from Taipei, Taiwan to San Francisco, California takes considerably less time and is more convenient than travel to Wilmington, Delaware. Direct flights from Taipei to San Francisco take approximately 11 hours, but no direct flights exist from Taipei to Wilmington (or to the nearby Philadelphia airport). Wada Decl. ¶¶ 25-26, Exs. 19, 20. Consequently, the approximate travel time to Wilmington, including at least one layover on the West Coast, is at least 18 hours. *Id.* ¶ 25, Ex. 19. In addition, documents that relate to HTC's engineering, development, and manufacturing of the accused-infringing products, as well as related royalty and partner agreements, are maintained primarily in Taiwan. Mackenzie Decl. ¶ 5.

Finally, HTC offers repair and customer support for HTC smart phones sold in America through facilities in Houston, Texas and Bellevue, Washington. *Id.* ¶ 7.

**E.      Neither the parties nor evidence is located in the District of Delaware.**

HTC Corporation, HTC America, HTC (B.V.I.) Corp. ("HTC BVI"), and Exedea do not have any personnel, offices, or business operations in Delaware. *See* Mackenzie Decl. ¶ 3. Furthermore, HTC is not aware of any corporate repository of engineering, development, manufacturing, or sales-and-marketing documents in Delaware. *See id.* ¶ 5. Similarly, HTC is unaware of any potential witnesses—specifically HTC engineers—who work in Delaware. *See id.* ¶ 6. Finally, HTC has no repair or customer-support facility in Delaware. *See id.* ¶ 7.

Not a single party in this case is incorporated in Delaware or has its principal place of business in Delaware. HTC Corporation is a Taiwanese company with its principal place of business in Taoyuan, Taiwan. *See id.* ¶ 3. HTC America is incorporated in Texas and has its principal place of business in Bellevue, Washington. *See id.* HTC BVI is a financial holding company that is incorporated and has its principal place of business in the British Virgin Islands. *See id.* Exedea is incorporated in Texas and has its principal place of business in Texas. *See id.*

As discussed above, Apple is incorporated in California and based in Cupertino, California. Compl. (D.I. 1) ¶ 1.

Nor are there any relevant third-party connections to the District of Delaware. Based on investigation to date, none of the alleged inventors is believed to reside in Delaware. Wada Decl. ¶ 20. Google has no offices, facilities, or Android personnel in the District of Delaware. Ong Decl. ¶ 6. Google did not conduct any development work on Android OS in Delaware and is not currently conducting any technical work on Android OS there. Rubin Decl. ¶ 8.

## IV.    ARGUMENT

Because this case "would more conveniently proceed and the interests of justice be better served" in the Northern District of California, it is within this Court's discretion to transfer this case. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); 28 U.S.C. § 1404(a). Transfer first requires that the claims "might have been brought" in the transferee venue. 28 U.S.C. § 1404(a). The inquiry then turns to whether litigation would more conveniently proceed and the interests of justice be better served in the transferee venue, considering both "private" and "public" interest factors. *Jumara*, 55 F.3d at 879. Here, the relevant private interests include: the plaintiff's choice of forum; the defendant's preferred forum; the convenience of the witnesses, the convenience of the parties, and where the claim arose. *See id.* Relevant public interests include: practical considerations that could make the trial easier, quicker, or less expensive; court congestion; and local interest in the controversy. *Id.* at 879-80.

Last month, in *Mekiki Co.*, 2010 U.S. Dist. LEXIS 55638 at *8-*10, the Court weighed the relevant *Jumara* factors and concluded that transfer from the plaintiff's chosen forum was warranted where the only connection to this district was defendant's incorporation in Delaware, and the convenience of the parties and witnesses would best be served by transfer. *Id.* Here, the

case for transfer is even stronger where no party is a Delaware corporation and *there is no connection* between this dispute and the District of Delaware.

The rationale of this Court's recent decision to transfer is further bolstered by several recent Federal Circuit decisions. For example, in *In re TS Tech USA, Corp.* the Federal Circuit mandated transferring to Ohio where the case had no unique connection to the district in which it was filed, no witnesses were present there, and the court "gave too much weight" to the plaintiff's choice of venue. 551 F.3d 1315, 1319-23 (Fed. Cir. 2008). Similarly, in *In re Genentech*, the Federal Circuit found a clear abuse of discretion in denying transfer where, *inter alia*, a "substantial number of material witnesses reside[d] within the transferee venue [the Northern District of California] and the state of California and no witnesses" resided in the district in which it was filed. 566 F.3d at 1345. And in *In re Hoffman-La Roche*, the Federal Circuit held that the transferee district's connection to the conduct at issue, local interest, access to sources of proof, witnesses residing there, and the transferor court's congestion amounted to a "stark contrast in relevance, convenience, and fairness between the two venues." 587 F.3d at 1336. In *In re Nintendo*, witness convenience weighed heavily in the Federal Circuit's decision to grant mandamus where witnesses residing in Asia and on the West Coast would be forced to travel significantly farther if the case proceeded in Texas instead of Washington state. 589 F.3d at 1199. Most recently, in *In re Zimmer Holdings*, the Federal Circuit again granted mandamus and ordered transfer, rejecting a plaintiff's attempt to "game the system" by seeking to establish venue in a forum that bore no connection to the dispute. 2010 WL 2553580 at *3-*6.

Here, as in *Mekiki*, *TS Tech*, *Genentech*, *Hoffman-LaRoche*, *Nintendo*, and *Zimmer*, there is a stark contrast in relevance, convenience, and fairness between the Northern District of California and the District of Delaware.

**A.    Apple could have brought this action in the Northern District of California.**

The prerequisite that this case be transferred to a district where it might have been

brought is plainly satisfied.  Apple could have brought this action against HTC in the Northern

District of California, which is a proper venue under 28 U.S.C. §§ 1391(c) and 1400(b).  HTC

engages in the activity alleged to infringe in the Northern District of California at least as much

as it does in the District of Delaware and so is subject to specific jurisdiction on that basis.

**B.    The private-interest factors weigh heavily in favor of transfer to the Northern
District of California.**

**1.    Apple's choice of a Delaware forum deserves little, if any, deference.**

Delaware law affords only minimal deference to a plaintiff seeking to avoid transfer from

a district that is neither its "home turf" nor meaningfully connected to the operative facts.  *See*

*Mekiki Co.,* 2010 U.S. Dist. LEXIS 55638 at \*8-\*10 (granting motion to transfer to Northern

District of California, where defendant had a lower burden in seeking transfer because plaintiff's

chosen forum was not its "home turf" or connected to its claims); *see also Affymetrix, Inc. v.*

*Synteni, Inc.,* 28 F. Supp. 2d 192, 199 (D. Del. 1998) (recognizing that the "'home turf rule' is

merely a short-hand way of saying that ... the weaker the connection between the forum and

either the plaintiff or the lawsuit, the greater the ability of a defendant to show sufficient

inconvenience to warrant transfer") (emphasis omitted).[7]

Just as Apple cannot dispute that its "home turf" is in the Northern District of California,

it cannot show that Delaware is meaningfully connected to the operative facts.  Courts have

---

[7]Indeed, recent decisions addressing the plaintiff's choice of venue have criticized its treatment
as a separate "factor," recognizing that it really corresponds to a moving party's burden in
demonstrating that the transferee venue is more convenient. *See In re TS Tech USA, Corp.,* 551
F.3d at 1320 (holding district court erred in giving "inordinate weight" to plaintiff's choice of
venue); *In re Volkswagon of Am. Inc.,* 545 F.3d 304, 314 n.10 (recognizing that plaintiff's choice
of venue is to be treated as a burden-of-proof question); *Sinochem Int'l Co. v. Malaysia Int'l*
*Shipping Corp.,* 549 U.S. 422, 429-30 (2007) (indicating that a plaintiff's choice of forum in the
analogous *forum non conveniens* analysis corresponds to the *burden* a moving party must meet).

uniformly rejected that mere sales of accused products within a district gives rise to any meaningful connection; in this regard, Delaware has no more connection to this case than any other district. *See, e.g., Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (granting motion to transfer where plaintiff could show no connection to its choice of forum beyond the sale of allegedly infringing products); *see also In re TS Tech USA, Corp.*, 551 F.3d at 1321 (noting that it "stretches logic" to say that sales of an infringing product give rise to a meaningful connection where the same "could apply virtually to any judicial district or division in the United States") (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 318 (5th Cir. 2008)).  Apple itself cited this law in support of its efforts to transfer a case from the Eastern District of Texas to the Northern District of California, noting that "aside from the fact that the accused [] products are available for purchase here—just as they are in every other judicial district in the country" the plaintiff's preferred forum "has no connection to the dispute underlying this action." Ex. 29 at 1.  The same is true here.

Because Apple's choice of forum is entitled to minimal deference at most, Apple must instead offer "substantive reasons indicating that the convenience to it of litigating in this forum … approaches the inconvenience which trial in this forum will impose on the defendants and their witnesses." *See Continental Cas. Co. v. American Home Assur. Co.*, 61 F. Supp. 2d 128, 131(D. Del. 1999) (citation omitted).  But Apple cannot offer *any* substantive facts demonstrating that litigating in Delaware would be more convenient.

### 2.   The Northern District of California is a far more convenient forum for the witnesses

Witness convenience is a critical factor under Section 1404(a), and here it strongly favors transfer to California.  As this Court has recognized in granting a motion to transfer, "the location of potential witnesses and, thus, their ability to be subject to compulsory process has weighed heavily in the balance of convenience analysis." *Affymetrix,* 28 F. Supp. 2d at 203

13

(citation and internal quotation omitted); *see also Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986) (describing the availability of witnesses as the "most crucial factor" in deciding motion to transfer). Indeed, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil v. Gilbert,* 330 U.S. 501, 511 (1947).

HTC is currently aware of no witness who is found in the District of Delaware. Even at this early stage, however, HTC has identified numerous persons with potentially relevant information who are found in the Northern District of California; including:

- 10 of the 11 named inventors of the patents-at-issue;

- The majority of Google personnel responsible for the design and development of the Android OS;

- The majority of Google personnel responsible for working with HTC to develop certain accused devices;

- Qualcomm employees responsible for designing and selling the chip implicated by Apple's infringement allegations.

Further, there are likely additional material third-party witnesses residing in the Northern District of California because all four of the patents-at-issue and much of the accused technology was developed in Silicon Valley. In addition to proving more convenient to these witnesses, the Northern District of California would also prove more equitable to HTC, which could issue trial subpoenas to compel these witnesses to testify at trial. That option is unavailable in Delaware. *See* Fed. R. Civ. P. 45.[8]

---

[8]California district courts can compel trial testimony of non-party witnesses throughout the state pursuant to Federal Rule of Civil Procedure 45(b)(2)(C), providing that a subpoena may be served anywhere within the state of the issuing court if authorized by state statute, and Section 1989 of the California Code of Civil Procedure, which authorizes statewide service. *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

While HTC has identified numerous third-party witnesses subject to compulsory process

in California, it is not aware of even *a single witness* in Delaware.  This dichotomy alone

warrants transfer.  *See Genentech*, 566 F.3d at 1345 (finding abuse of discretion in denying

transfer where, *inter alia*, a "substantial number of material witnesses" resided within the

transferee venue and no witnesses resided in the district where it was filed).

> **3.     The Northern District of California would be a far more convenient forum
> for the parties.**

Apple cannot dispute that the Northern District of California is a more convenient forum

for Apple and its employee-witnesses based in Cupertino, California.  *See Nilssen v. OSRAM*

*Sylvania, Inc.*, No. 00-695-JJF, 2001 WL 34368395 at * 2 (D. Del May 1, 2001) (noting that

convenience of plaintiff favored transfer to the location of its principal place of business and

employees).  Nor can Apple—even with the benefit of discovery—dispute that transferring this

case will be more convenient for HTC and its employee-witnesses.  HTC has no personnel,

facilities, or business operations in Delaware.  Mackenzie Decl. ¶ 3.  In contrast, HTC has a

design facility in San Francisco that employs approximately 16 people, including one who helps

make strategic decisions related to HTC's smart phones.  *Id.* ¶ 8.  Most of the relevant HTC

engineers work and live in Taiwan.  *Id.* ¶ 6.  For each of these witnesses, transfer to the Northern

District of California would save at least 7 hours of travel time *each way*.  Wada Decl. ¶¶ 25-26.

The key documents on HTC's engineering, development, and manufacturing of the accused

infringing smart phones, as well as related royalty and partner agreements, are maintained

primarily in Taiwan.  Mackenzie Decl. ¶ 5.  HTC's sales, marketing, and product-support

activities targeted to the American market are managed from Washington state, which is more

conveniently situated to San Francisco than Wilmington.  *Id.* ¶ 9; *see* Wada Decl. ¶¶ 23-24.  And

sales-and-marketing documents, including sales literature, forecasts, and market analyses, that

pertain to the U.S. market are maintained primarily in Bellevue, Washington (and to a lesser

degree in Taiwan). *See* Mackenzie Decl. ¶ 5; *see also Genentech*, 566 F.3d at 1346 (finding that

costs and significant burden to parties of transporting documents favored transfer).

    As Apple has itself argued in seeking transfer to the Northern District of California, "[i]t

goes without saying that additional distance from home means additional travel time; additional

travel time increases the probability for meal and lodging expenses; and additional travel time

with overnight stays increases the time which these fact witnesses must be away from their

regular employment." Ex. 29 at 9 (citation omitted); *see also Mekiki*, 2010 U.S. Dist. LEXIS

55638 at *11 ("[C]onsidering the physical distance of both parties to Delaware, it is clear that

litigating this matter in the Northern District of California would be significantly more

convenient and less burdensome....").

    4.    **Apple's claims arose in the Northern District of California.**

    To the extent that Apple's claims are centered on any federal judicial district, they are

centered on the Northern District of California, where key evidence and witnesses are located.

Apple is there; the four asserted inventions were apparently conceived and reduced to practice

there; the patents were issued to inventors who resided and for the most part still reside there;

and the Google team that HTC collaborated with on technology alleged to infringe is based there.

*See* Exs. 4-7; Rubin Decl. ¶ 7. None of those things can be said of the District of Delaware.

**C.    The Public Interest Factors Also Weigh in Favor of Transfer to the Northern
       District of California**

    1.    **Practical considerations and court congestion favor transferring to the
          Northern District of California.**

    Significantly, as explained above, practical considerations that could make the trial

easier, quicker, more fair, and less expensive strongly favor the Northern District of California

given its greater convenience to the witnesses, parties, and access to proof. As to court

congestion, case-disposition statistics demonstrate that the Northern District of California offers

a shorter median time to trial—over six months less—than the District of Delaware.[9]  Moreover,

vacancies in this Court's judgeships have created a backlog.  Thus, practical considerations and

court congestion tip the scale further towards transfer.

> **2.  Judicial efficiency strongly support transfer notwithstanding Apple's tactical request for consolidation.**

Judicial efficiency also weighs in favor of transfer.  Any supposed overlap between a

*single* patent Apple asserts in the instant case and other cases pending in this District provides no

rational basis for maintaining this case in Delaware.[10]  As a mirror-image case held in denying

transfer to district where other lawsuits involving the same patents were pending, patent overlap

does not outweigh the importance of holding trial "closer to the hub of activity pertinent to this

case and to key witnesses." *See Google, Inc. v. Traffic Info., LLC*, C.A. No. 09-642-HU, 2010

WL 743878 at *6-*7 (D. Or. Feb. 2, 2010), *adopted by*, 2010 WL 1039791 (D. Or. Mar 19,

2010) ("[T]he preferred forum is that which is the center of gravity of the accused activity.")

(internal quotation and citation omitted).

Moreover, to the extent that Apple intends to seek consolidation of this case with Nokia's

cases against Apple, doing so would be impractical and improper for all of the reasons set forth

in HTC's opposition to the motion for consolidation, including over-complication, new delays,

increased expense, and unavoidable prejudice to HTC and Nokia.  *See* HTC Answering Brief in

Opp. to Mot. to Consolidate (C.A. No. 10-166-GMS (D.I. 37); C.A. No. 10-167-GMS (D.I. 41)).

Indeed, the prospect of consolidation is made even more impractical by Apple's filing of this

---

[9] According to the Federal Judicial Caseload Statistics for the most recent reporting period, 2009, the median time interval in months from the filing of a case to trial is 32.2 months in the District of Delaware and 25.5 months in the Northern District of California. Ex. 30.

[10] Only the '453 Patent at issue here *potentially* overlaps with any at issue in the Nokia cases. Even this overlap, however, is dubious given that Apple's assertion of the '453 Patent against Nokia is subject to same attack as set forth HTC's  motion to dismiss the '453 Patent. *See* Motion to Dismiss Count VIII of Complaint Pursuant to Rule 12(b)(6), C.A. No. 10-167-RK (D.I. 26).

case, for which consolidation would bring the total number of patents in the non-stayed cases up to *31 patents*. Further, counting the patents in the stayed and non-stayed cases, the resulting consolidated litigation would involve at least *49 total patents*. Of course, these figures do not even take into account Apple's bid to transfer Nokia's recently-filed complaint in the Western District of Wisconsin to this District and a likely attempt at further consolidation by Apple, which would inject another twelve active patents into any consolidated litigation.

Any claim by Apple that it seeks consolidation for efficiency—and not to avoid transfer—is belied by its litigation conduct. Apple failed to indicate the existence of any related cases pending in this District when it filed its complaints in the 166 and 167 Cases—despite Apple's having already asserted its patent-infringement counterclaims against Nokia. On multiple occasions thereafter, Apple could have moved to consolidate but failed to do so. Instead, Apple took the unusual step of submitting a letter to this Court explaining that it had "come to [its] attention" that the cases "involve *some* of the same technology" and that they should merely be "identified" as related. *See* Letter of March 24, 2010, (C.A. Nos. 10-166-GMS, 10-167-RK (D.I. 5)) (emphasis added). On these facts, Apple's belated and tactical consolidation motion cannot justify denying transfer. The Supreme Court has made clear that a party's self-serving attempt to manipulate venue cannot defeat a venue transfer motion. *See Van Dusen*, 376 U.S. at 624 ("The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law *and not from the deliberate conduct of a party favoring trial in an inconvenient forum*.") (emphasis added). Practical considerations strongly favor transfer.

### 3. The Northern District of California has a strong interest in resolving the dispute.

There can be no question that the Northern District of California has a strong local interest in resolving this dispute; it is home to Apple's headquarters, the conception and

development of all asserted patents, the vast majority of the named inventors of these patents, and key third-party witnesses from Google who developed much of the accused technology.

By contrast, and as Apple itself argued in seeking transfer of a different case to the Northern District of California, Delaware "has no connection to the dispute underlying this action aside from the fact that the accused [] products are available for purchase here—just as they are in every other judicial district in the country." *See* Ex. 29 at 1; *id.* at 6 ("As in *TS Tech*, the only potential link between the dispute underlying this action and the Eastern District is that some of the accused products are sold in this District.") (citing *In re TS Tech USA Corp*, 551 F.3d at 1321). The burden of resolving an onerous legal dispute should not be "imposed upon the people of a community which has no relation to the litigation." *Ferens v. John Deere Co.*, 494 U.S. 516, 529-30 (1990) (citation omitted). Thus, this factor, too, weighs in favor of transfer.

## V.    CONCLUSION

HTC seeks to have this case, like the others, proceed in the jurisdiction that is most convenient to witnesses, third parties, and the parties themselves.  Transfer of these cases to the Northern District of California will serve section 1404(a)'s purpose "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *See Van Dusen*, 376 U.S. at 616 (internal citations omitted).  HTC respectfully requests that the Court transfer this case and the 166 and 167 Cases to the Northern District of California.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

KEKER & VAN NEST LLP
Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John Bostic
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

Dated: July 16, 2010

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on July 16, 2010, I caused to be

electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification of such filing to the following counsel of record:

> Richard K. Herrmann [rherrmann@morrisjames.com]
> Mary B. Matterer [mmatterer@morrisjames.com]
> MORRIS JAMES LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, Delaware 19801

I further certify that on July 16, 2010, I caused a copy of the foregoing document to be

served by e-mail on the above-listed counsel and on the following non-registered participants in

the manner indicated:

### *By E-Mail*

> Robert G. Krupka [bob.krupka@kirkland.com]
> KIRKLAND & ELLIS LLP
> 333 Hope Street
> Los Angeles, CA 90071

> Gregory S. Arovas [greg.arovas@kirkland.com]
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022

> Bryan S. Hales [bryan.hales@kirkland.com]
> Marcus E. Sernel [marc.sernel@kirkland.com]
> James A. Shimota [jshimota@kirkland.com]
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654

> Kenneth H. Bridges [kbridges@WongCabello.com]
> Michael T. Pieja [mpieja@WongCabello.com]
> Brian C. Kwok [bkwok@WongCabello.com]
> WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI LLP
> 540 Cowper Street, Suite 100
> Palo Alto, CA  94301

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ John W. Shaw*

John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Defendants High Tech Computer*
*Corp., a/k/a HTC Corp.; HTC (B.V.I.) Corp.;*
*HTC America, Inc.; and Exedea, Inc.*